QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Shon Morgan (Bar No. 187736)
  shonmorgan@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:    (213) 443-3000
Facsimile:    (213) 443-3100

  Patrick T. Burns (Bar No. 300219)
  patrickburns@quinnemanuel.com
  Tina T. Lo (Bar No. 311184)
  tinalo@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSIE REXROAD, et al., | CASE NO. 19-cv-01461-SI |
| Plaintiffs, | **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FRCP 12(B)(6)** |
| v. | |
| HYUNDAI MOTOR COMPANY, et al., | The Hon. Susan Illston |
| Defendants. | Date:        November 8, 2019<br>Time:        10:00 AM<br>Courtroom:        1 |

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2        Please take notice that on November 8, 2019, at 10:00 AM, the undersigned will appear

3  before the Honorable Susan Illston in Courtroom 1 of the United States District Court for the

4  Northern District of California, San Francisco Courthouse, Courtroom 1 - 17th Floor, 450 Golden

5  Gate Avenue, San Francisco, CA 94102, and shall then and there present defendants'[1] Motion to

6  Dismiss.  This motion is based on this Notice of Motion and Motion, as well as all records and

7  papers on file in this action, any oral argument, and any other evidence that the Court may

8  consider in hearing this Motion.

9

10

11  DATED:  September 26, 2019            QUINN EMANUEL URQUHART &
                                          SULLIVAN, LLP
12

13

14                                        By _____/s/ Shon Morgan_____
                                             Shon Morgan
15                                           Attorneys for Defendants

16

17

18

19

20

21

22

23

24

25

26

27  _____

28     [1]  Hyundai Motor America, Inc. ("HMA"), Hyundai Motor Company ("HMC"), Kia Motors
       America, Inc. ("KMA"), and Kia Motors Corporation ("KMC") (collectively "defendants").

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ..................................................................................................... 2

    Plaintiff Witcher's Experiences With His 2012 Kia Optima.......................................... 2

    Plaintiff Silvera's Experiences With His 2017 Kia Sorrento ......................................... 3

    Plaintiff Gurtler's Experiences With Her 2014 Hyundai Santa Fe ................................. 3

    Plaintiff Galindo's Experiences With Her 2012 Kia Optima Hybrid ............................. 4

    Plaintiff Perry's Experiences With His 2015 Kia Optima.............................................. 4

    Plaintiff Esqueda's Experiences With Her 2014 Kia Optima......................................... 4

    Plaintiff Rexroad's Experiences With Her 2011 Kia Optima......................................... 5

    Plaintiffs' Broad, Unspecified Purported Class. ........................................................... 5

LEGAL STANDARD .......................................................................................................... 6

I.      PLAINTIFFS' FRAUD-BASED CLAIMS FAIL ....................................................... 6

    A.     Plaintiffs' Do Not Identify Any Specific Misrepresentations ................................... 6

    B.     Plaintiffs Fail To Allege Fraudulent Omissions With Specificity.......................... 9

    C.     Plaintiffs Fail To Allege Reliance ........................................................................ 11

    D.     Plaintiffs Fail To Adequately Plead Defendants Knew About the Purported Defect at the Time of Sale ................................................................................... 12

II.    PLAINTIFFS' EXPRESS WARRANTY CLAIMS FAIL ........................................... 14

    A.     Plaintiff Fail To Allege Express Warranty Under California and Michigan Law ..................................................................................................................... 14

          1.    Plaintiffs Lack Privity With Defendants .................................................. 14

          2.    Plaintiffs Do Not Allege An Express Warranty or the Terms of Any Express Warranty ................................................................................... 14

          3.    Plaintiffs Fail To Allege Breach Of Any Express Warranty ..................... 16

III.   PLAINTIFFS' IMPLIED WARRANTY CLAIMS FAIL ........................................... 16

    A.     Plaintiffs Lack Privity With Defendants, Which Defeats Claims Under Michigan, Arizona, and North Carolina Law ..................................................... 16

    B.     Plaintiffs' Claims Under Nevada's Implied Warranty Statute Fail ...................... 17

C.      Plaintiffs Do Not Allege Their Vehicles Are Unfit For Their Ordinary Purpose.................................................................................................. 17

D.      Plaintiffs' Song-Beverly Act Claims Fail ............................................... 18

E.      Plaintiffs' Magnuson-Moss Warranty Act Claims Fail ......................... 19

        1.      Plaintiffs Plead No Viable State Law Warranty Claims ............ 19

        2.      Plaintiffs' Complaint Fails To Contain 100 Named Plaintiffs ... 19

IV.     PLAINTIFFS LACK STANDING TO BRING CLAIMS BASED ON ECONOMIC HARM.................................................................................... 20

CONCLUSION .................................................................................................... 21

# <u>TABLE OF AUTHORITIES</u>

**Page**

## <u>Cases</u>

*Anderson v. Hyundai Motor Company Ltd.*,
  2014 WL 12579305 (C.D. Cal. July 24, 2014) .......................................................................... 21

*Barakezyan v. BMW of N. Am., LLC*,
  No. CV1600173SJOGJSX, 2016 WL 2840803 (C.D. Cal. Apr. 7, 2016) ................................ 15

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ........................................................... 6

*Birdsong v. Apple, Inc.*,
  590 F.3d 955 (9th Cir. 2009) .................................................................................................... 19

*Brown v. Hyundai Motor America*,
  No. 18-11249, 2019 WL 4126710 (D.N.J. Aug. 30, 2019)....................................................... 21

*Cadena v. Am. Honda Motor Co.*,
  No. CV184007MWFPJWX, 2019 WL 3059931 (C.D. Cal. May 29, 2019) ........................... 20

*Cahen v. Toyota Motor Corp.*,
  717 Fed. Appx. 720 (9th Cir. 2017) ......................................................................................... 21

*Chiasson v. Winnebago Indus.*,
  No. 01-CV-74809, 2002 WL 32828652 (E.D. Mich. May 16, 2002) ................................ 16, 17

*Clemens v. DaimlerChrysler Corp.*,
  534 F.3d 1017 (9th Cir. 2008) .................................................................................................. 19

*Colgate v. JUUL Labs, Inc.*,
  345 F. Supp. 3d 1178 (N.D. Cal. 2018) .............................................................................. 7, 8, 9

*Cummins, Inc. v. Superior Ct.*,
  36 Cal. 4th 478 (Cal. 2005) ...................................................................................................... 18

*Dassault Falcon Jet Corp. v. Oberflex, Inc.*,
  909 F. Supp. 345 (M.D.N.C. 1995) .......................................................................................... 17

*Davidson v. Apple, Inc.*,
  2017 WL 976048 (N.D. Cal. Mar. 14, 2017) ............................................................................ 10

*De Shazer v. Nat'l RV Holdings, Inc.*,
  391 F. Supp. 2d 791 (D. Ariz. 2005).......................................................................................... 15

*Dillon v. Zeneca Corp.*,
  202 Ariz. 167, 42 P.3d 598 (Ariz. Ct. App. 2002)..................................................................... 14

*Doe v. SuccessfulMatch.com*,
  70 F. Supp. 3d 1066 (N.D. Cal. Sept. 30, 2014)........................................................................ 11

*Elias v. Hewlett-Packard Co.*,
  903 F. Supp. 2d 843 (N.D. Cal. 2012) ...................................................................................... 18

*Frenzel v. AliphCom*,
  76 F.Supp.3d 999 (N.D. Cal. 2014) ....................................................................................... 7, 9

*Grodzitsky v. Am. Honda Motor Co.*,
  No. 2:12-cv-1142-SVW-PLA, 2013 WL 690822 (C.D. Cal. Feb. 19, 2013) ........................... 13

*Hindsman v. Gen. Motors LLC*,
  No. 17-CV-05337-JSC, 2018 WL 2463113 (N.D. Cal. June 1, 2018) ...................................... 18

**MOTION TO DISMISS**

*Hoey v. Sony Electronics, Inc.*,
   515 F. Supp. 2d 1099 (N.D. Cal. 2007) ........................................................................... 10

*In re Clorox Consumer Litig.*,
   894 F. Supp. 2d 1224 (N.D. Cal. 2012) ...................................................................... 14, 16

*In re GlenFed, Inc. Sec. Litig.*,
   42 F.3d 1541 (9th Cir. 1994) ..................................................................................... 7, 9

*In re MyFord Touch Consumer Litig.*,
   46 F. Supp. 3d 936 (N.D. Cal. 2014) ............................................................................... 8

*In re Nexus 6P Prod. Liab. Litig.*,
   293 F. Supp. 3d 888 (N.D. Cal. 2018) .............................................................................. 7

*In re Packaged Seafood Prod. Antitrust Litig.*,
   242 F. Supp. 3d 1033 (S.D. Cal. 2017) ........................................................................... 10

*In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*,
   758 F. Supp. 2d 1077 (S.D. Cal. 2010) ............................................................................. 6

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*,
   754 F. Supp. 2d 1145 (C.D. Cal. 2010).......................................................................... 15

*James Erickson Family P'ship LLLP v. Transamerica Life Ins. Co.*,
   No. CV-18-04566-PHX-DWL, 2019 WL 1755858 (D. Ariz. Apr. 19, 2019) ..................... 7, 10

*Kearney v. Hyundai Motor Am.*,
   2010 Wl 8251077 (C.D. Cal. Dec. 17, 2010) ................................................................... 14

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ............................................................................... 7, 9, 11

*Keegan v. Am. Honda Motor Co.*,
   838 F. Supp. 2d 929 (C.D. Cal. 2012) ............................................................................ 20

*Kent v. Hewlett-Packard Co.*,
   2010 WL 2681767 (N.D. Cal. July 6, 2010) ...................................................................... 6

*Kowalsky v. Hewlett-Packard Co.*,
   771 F. Supp. 2d 1156 (N.D. Cal. 2011) .......................................................................... 12

*Lierboe v. State Farm Mut. Auto. Ins. Co.*,
   350 F.3d 1018 (9th Cir. 2003) ...................................................................................... 20

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) .................................................................................................... 20

*MacDougall v. Am. Honda Motor Co., Inc.*,
   No. SACV 17-01079 AG, 2017 WL 8236359 (C.D. Cal. Dec. 4, 2017)................................. 19

*MacRae v. HCR Manor Care* Services,
   No. SACV 14-0715-DOC, 2014 WL 3605893 (C.D. Cal. July 21, 2014)............................... 11

*Marolda v. Symantec Corp.*,
   672 F. Supp. 2d 992 (N.D. Cal. 2009) .............................................................................. 9

*Misc. Serv. Workers, Drivers & Helpers v. Philco–Ford Corp.*,
   661 F.2d 776 (9th Cir. 1981)....................................................................................... 6, 8

*Montgomery v. Kraft Foods Glob., Inc.*,
   822 F.3d 304 (6th Cir. 2016)........................................................................................ 14

*Morgan v. Harmonix Music Sys., Inc.*,
   No. C08-5211BZ, 2009 WL 2031765 (N.D. Cal. July 7, 2009) ............................................. 8

MOTION TO DISMISS

*Nabors v. Google, Inc.,*
    5:10–CV–03897 EJD, 2011 WL 3861893 (N.D. Cal. Aug. 30, 2011) ............................... 14, 16

*Opperman v. Path, Inc.,*
    87 F. Supp. 3d 1018 (N.D. Cal. 2014) ........................................................... 11, 12

*Patterson v. RW Direct, Inc.,*
    No. 18-cv-00055-VC, 2018 WL 6106379 (N.D. Cal. Nov. 21, 2018) ....................................... 19

*Pence v. Andrus,*
    586 F.2d 733 (9th Cir. 1978) ...................................................................... 20

*Richards v. Powercraft Homes, Inc.,*
    139 Ariz. 242, 678 P.2d 427 (1984) ................................................................ 17

*Spokeo, Inc. v. Robins,*
    136 S. Ct. 1540 (2016) ............................................................................ 20

*Vess v. Ciba–Geigy Corp.,*
    317 F.3d 1097 (9th Cir. 2003) ...................................................................... 6

*Wilson v. Hewlett-Packard Co.,*
    668 F.3d 1136 (9th Cir. 2012) .................................................................. 12, 13

*Yancey v. Remington Arms Co., LLC,*
    No. 1:10CV918, 2013 WL 5462205 (M.D.N.C. Sept. 30, 2013) ........................................ 15

## **Statutes**

15 U.S.C. § 2310(d)(1) ................................................................................. 19

15 U.S.C.A. § 2310 ..................................................................................... 19

Cal. Civ. Code § 1792 ................................................................................. 18

Cal. Civ. Code § 1795.5(a) ............................................................................. 19

FRCP 8 ................................................................................................ 9

FRCP 9(b) ..................................................................................... 6, 7, 8, 9, 11

FRCP 12(b)(6) .......................................................................................... 9

Mich. Comp. Laws § 440.2313(1)(a) ..................................................................... 15

Mich. Comp. Laws Ann. § 440.2314 ..................................................................... 18

N.C. Gen. Stat. § 25-2-314 ............................................................................. 18

Nev. Rev. Stat. Ann. § 104.2314 ....................................................................... 18

MOTION TO DISMISS

## PRELIMINARY STATEMENT

Plaintiffs' complaint alleges a vast fraudulent conspiracy that accuses defendants of knowingly failing to disclose engine defects, but fails to provide even minimal specificity, let alone the particularity required under the Federal Rules.  The only apparent support for plaintiffs' broad, fraud-based claims is that defendants recalled certain vehicles in a proactive effort to remedy engine-related issues.  Four of the named plaintiffs have not experienced *any* issue with their vehicles, yet nonetheless claim breach of an undescribed warranty.

The public record demonstrates defendants have provided remedies to the subset of customers whose vehicles might have been affected.  Specifically, in 2015, Hyundai Motor America, Inc. ("HMA") and Hyundai Motor Company, Ltd ("HMC") (together "Hyundai") became aware of connecting rod bearing issues affecting some 2011-2012 Sonata vehicles manufactured at a particular facility.  In September 2015, HMA conducted a recall in conjunction with the National Highway Traffic Safety Administration ("NHTSA"), offering free inspections for all 2011-2012 Sonata vehicles and replacement of any engines that exhibited a connecting rod lubrication issue.  HMA also voluntarily extended the warranties for those vehicles and offered to reimburse customers who previously paid for such repairs.  After continued monitoring, HMA extended the recall in March 2017 to 2013-2014 Sonata and Santa Fe vehicles.

In 2016, Kia Motors America ("KMA") became aware of connecting rod bearing issues affecting *some* 2011-2014 model years of the Kia Optima, Sorento, and Sportage.  KMA voluntarily extended the warranties for these vehicles in mid-2016, and offered to reimburse customers who previously paid for such repairs.  KMA supplemented those actions on March 31, 2017, by conducting a recall in conjunction with the NHTSA.

Defendants continued to monitor the field data concerning these issues, including vehicles not subject to the prior recalls.  Although overall warranty claims rates were still very low, in February 2019, defendants launched additional recalls covering certain Kia Soul and Hyundai Tucson vehicles equipped with different engine models for different technical reasons.  Ongoing investigation, in conjunction with the NHTSA, has not warranted additional recalls.

MOTION TO DISMISS

1    Here, plaintiffs allege various defects, in different engine models, in multiple model year

2  vehicles.  Lacking any factual connection between their vehicles' issues and those addressed by

3  the pre-2019 remedial programs, plaintiffs have summarily, and illogically, concluded that their

4  vehicles should also have been subject to the earlier recalls—and that the defendants should

5  compensate them for illusory injuries despite enjoying full use of their vehicles.[2]

6    Plaintiffs' claims suffer from insurmountable pleading deficiencies.  Most significantly,

7  the fraud based-allegations fail because plaintiffs do not identify any actionable affirmative

8  misrepresentations, or material omissions of which the defendants were or should have been

9  aware.  As to the breach of warranty claims, plaintiffs offer no factual support for the proposition

10  that their warranties were breached, and many of the warranty claims fail based on where plaintiffs

11  purchased the vehicles or whether the vehicles were new or used.  Plaintiffs' remaining claims fail

12  for various additional reasons detailed in this motion.

13    **STATEMENT OF FACTS**

14  **Plaintiff Witcher's Experiences With His 2012 Kia Optima**

15    Witcher alleges he bought a used 2012 Kia Optima with approximately 60,000 miles from

16  Crown Automotive in Charlotte, North Carolina in October 2017.  (Compl. p. 7, ¶ 37.)[3]  He does

17  not allege anyone at Crown Automotive made pre-sale representations to him, and only alleges

18  that he relied on "commercial advertisements about, among other things, Kia's reliability and

19  safety ratings."  (*Id.*)  Witcher provides no specifics about the commercial advertisements upon

20  which he purportedly relied, such as whether they were print advertisements, television

21  commercials, or some other medium.  Nor does he specify what content they contained, or when

22  he viewed the advertisements.

23

24

25    [2]  Four of the seven plaintiffs do not allege having experienced any issue relating to a

26  supposed "defect" or that they requested repairs by a Hyundai or Kia dealership.

27    [3]  Citations to the Complaint use page numbers as well as paragraph numbers because of a
numbering error in the Complaint.  After paragraph 83, numbering jumps back to 61 and therefore

28  there are several paragraphs with duplicate numbers.  The paragraph numbers for each citation
correspond to the cited page.

Witcher alleges that one month after purchase, his Optima broke down. (*Id.*) The engine was replaced under warranty. (*Id.* p. 7, ¶ 38.) Eight months later, he contends he smelled smoke and the car subsequently caught fire. (*Id.* pp. 7-8, ¶ 39.)

**Plaintiff Silvera's Experiences With His 2017 Kia Sorrento**

Silvera asserts that he bought a 2017 Kia Sorrento in June 2017 from Kia of Riverside in Riverside, California. (*Id.* p. 10, ¶ 41.) He does not contend that anyone at Kia of Riverside made pre-sale representations to him, but he contends he relied on "representations in Kia's advertising," coming from "reliable sources" such as third-parties Consumer Reports and JD Powers. (*Id.* p. 10, ¶ 42.) Silvera does not allege what type of advertisements he viewed, what content they contained, or when he viewed the advertisements. Silvera alleges that on December 17, 2018, he received a "Product Improvement Campaign" notice from Kia requesting that he bring in his vehicle for a software installation update regarding the vehicle's engine. Silvera does not allege he brought his vehicle in as requested. He claims he was "frustrated to learn that his engine is defective and unsafe." (Compl. p. 11, ¶ 45.) Silvera does not contend that his engine is defective or that it has operated other than as expected.

**Plaintiff Gurtler's Experiences With Her 2014 Hyundai Santa Fe**

Gurtler alleges that in May 2014, she purchased a new 2014 Hyundai Santa Fe from Horne Hyundai of Apache Junction, Arizona. (*Id.* p. 11, ¶ 46.) She does not contend anyone at Horne Hyundai made pre-sale representations to her, but alleges that she purchased the vehicle based on research she had conducted about the safety of comparable vehicles. (*Id.* p. 11, ¶ 47.) Gurtler asserts that more than three years after she purchased the vehicle, she brought it in for inspection after learning of a recall campaign. (*Id.* p. 11, ¶ 48.) She does not identify which recall campaign specifically, nor does she identify where she brought her vehicle. Wherever she brought her vehicle, she claims that she was told "no replacement was necessary," presumably referring to the vehicle's engines or parts. (*Id.*) Gurtler alleges that in November 2018, one year after she brought the vehicle in, the vehicle began to smoke and caught fire. (*Id.* p. 11, ¶ 49.)

**Plaintiff Galindo's Experiences With Her 2012 Kia Optima Hybrid**

Galindo avers that she purchased a 2012 Kia Optima Hybrid, but she does not allege the purchase date, where she purchased the vehicle from, or whether she purchased the vehicle pre-owned or new.  (*Id.* p. 13, ¶ 51.)  She does not contend anyone at Horne Hyundai made pre-sale representations to her, nor that she viewed any owner's manuals, advertisements, or marketing materials.  She does not claim that she relied on any representations or information of any kind in purchasing her vehicle.  She contends that when her boyfriend was driving the car, it broke down due to an engine issue.  (*Id.* p. 13, ¶ 52.)  She allegedly took her car to an unidentified dealership.  (*Id.* p. 13, ¶ 53.)  She asserts the dealership did not fix her engine defect and told her the vehicle was not covered by a recall (which she fails to identify) because it is a hybrid model.  (*Id.* p. 13, ¶¶ 53-54.)

**Plaintiff Perry's Experiences With His 2015 Kia Optima**

Perry asserts that in April 2017, he purchased a pre-owned 2015 Kia Optima from Summit Place Kia in Clinton Township, Michigan.  (*Id.* p., 14, ¶ 56.)  He does not allege that anyone at Horne Hyundai made pre-sale representations to him, nor that he viewed any owner's manuals, advertisements, or marketing materials.  He does not claim that he relied on any representations or information of any kind in purchasing his vehicle.  He also does not allege the vehicle mileage, nor whether the vehicle had any specific maintenance or accident history.  He contends that in February 2019, his wife was driving the car when the engine stopped working.  (*Id.* p. 14, ¶ 58.)  He claims the vehicle was taken to a dealership, but does not identify which dealership.  (*Id.* p. 14, ¶ 59.)  He alleges that he was told his vehicle was not covered under a recall (which he does not identify).  He does not allege whether he attempted to have his vehicle fixed.

**Plaintiff Esqueda's Experiences With Her 2014 Kia Optima**

Esqueda claims she bought a 2014 Kia Optima, but she does not allege a purchase date, from where she purchased the vehicle, or whether it was new or used vehicle.  (*Id.* p. 14, ¶ 61.)  Esqueda does not allege reliance on any advertisements, marketing materials, or pre-sale representations.  Nor does she allege there is anything defective about her vehicle.

**Plaintiff Rexroad's Experiences With Her 2011 Kia Optima**

Rexroad contends she purchased a pre-owned 2014 Kia Optima, but she does not allege a purchase date or from where she bought the vehicle.  (*Id.* p. 14, ¶¶ 64-66.)  Rexroad does not allege reliance on any advertisements, marketing materials, or pre-sale representations.  She does not claim there is anything defective about her Optima.

**Plaintiffs' Broad, Unspecified Purported Class.**

Plaintiffs assert that their vehicles, along with other model years, contain defects that may restrict oil flow within the engine, such as the rod connecting bearings, causing engine damage, failure, stalling, and/or fires.  (*Id.* p. 2, ¶ 2.)  Plaintiffs claim the Class Vehicles are model year 2011-2019 Hyundai Sonatas, model year 2013-2019 Hyundai Santa Fes, model year 2013-2019 Santa Fe Sports, model year 2011-2019 Kia Optimas, model year 2011-2019 Kia Sorentos, model year 2011-2019 Kia Sportages, and model year 2010-2019 Kia Souls. (*Id.* p. 2, ¶ 1).  Plaintiffs contend the defect exists in gasoline direct injections ("GDI") engines but do not contend that all of the Class Vehicles use a GDI engine.  Nor do they assert any other facts connecting the Class Vehicles, such as that the engine models that exist in the vehicles are identically designed or manufactured, that the relevant marketing or warranty statements are the same for each model over the range of model years, or that the engines even suffer from the same type of defect.

Plaintiffs assert a number of claims under different state consumer protection statutes, including California's Unfair Competition Law ("UCL") (Count I), False Advertising Law ("FAL") (Count II), and Consumer Legal Remedies Act ("CLRA") (Count III), as well as the Arizona Consumer Fraud Act ("ACFA") (Count IV), and the Michigan Consumer Protection Act ("MCPA"), the North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA") (Count VI).  (Compl., p. 31-46, ¶¶ 118-239).  They also assert a breach of express warranty claim (Count VII), and breaches of the implied warranty laws of Nevada (Count VIII), as well as Michigan, Arizona, and North Carolina (Count IX).  They also allege warranty violations under the Beverly-Song Act (Count X), and the Magnuson-Moss Warranty Act (Count XI).

MOTION TO DISMISS

1

**Legal Standard**

2      A complaint must plead sufficient facts to state a claim that is plausible on its face.  *Bell*

3 *Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  "[A]

4 plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than

5 labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

6 *Id.* at 555.

7      Complaints alleging fraud must satisfy the heightened pleading requirements of Federal

8 Rule of Civil Procedure 9(b) which requires that "in all averments of fraud or mistake, the

9 circumstances constituting fraud or mistake shall be stated with particularity."  *In re Sony Grand*

10 *Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077,

11 1087 (S.D. Cal. 2010).  A plaintiff may satisfy Rule 9(b) if he "state[s] the time, place and specific

12 content of the false representations as well as the identities of the parties to the

13 misrepresentation." *Misc. Serv. Workers, Drivers & Helpers v. Philco–Ford Corp.,* 661 F.2d 776,

14 782 (9th Cir. 1981).

15 **I.**     **PLAINTIFFS' FRAUD-BASED CLAIMS FAIL**

16      Plaintiffs' claims under the UCL (Count I), FAL (Count II), CLRA (Count III), ACFA

17 (Count IV), MCPA (Count V), and NCUDTPA (Count VI) should all be dismissed for numerous

18 deficiencies, including that plaintiffs fail to satisfy Rule 9(b) because their allegations sound in

19 fraud and they have failed to allege specific misrepresentations or omissions by defendants,

20 defendants' knowledge of any nondisclosures, or plaintiffs' reliance on any representations or

21 omissions.

22     **A.**     **Plaintiffs' Do Not Identify Any Specific Misrepresentations**

23      Plaintiffs' UCL, FAL, CLRA, ACFA, MCPA, and NCUDTPA claims all share the

24 common allegation that defendants "knowingly and intentionally conceal[ed]" an alleged engine

25 defect from the plaintiffs on the class vehicles.  Accordingly, the claims sound in fraud and must

26 satisfy the heightened pleading requirements of Rule 9(b).  *See Vess v. Ciba–Geigy Corp.,* 317

27 F.3d 1097, 1103–04 (9th Cir. 2003); *Kent v. Hewlett-Packard Co.*, 2010 WL 2681767, at *10

28 (N.D. Cal. July 6, 2010) ("Allegations of active concealment sound in fraud, and thus must meet

the heightened pleading requirements of [Rule 9(b)]."); *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1125-27 (9th Cir. 2009) (affirming dismissal of CLRA and UCL claims for failure to satisfy Rule 9(b)); *James Erickson Family P'ship LLLP v. Transamerica Life Ins. Co.,* No. CV-18-04566-PHX-DWL, 2019 WL 1755858, at *4 (D. Ariz. Apr. 19, 2019)  (dismissing ACFA claim for failure to satisfy rule 9(b)); *Williams v. Scottrade, Inc.*, No. 06-10677, 2006 WL 2077588, at *7 (E.D. Mich. July 24, 2006) (dismissing Michigan Consumer Protection Act claim for failure to plead claims with particularity under Rule 9(b)).

To meet the heightened standards of Rule 9(b) "a plaintiff must identify 'the time, place, and content of [the] alleged misrepresentation[s],' as well as the 'circumstances indicating falseness' or 'manner in which the representations at issue were false and misleading.'" *Frenzel v. AliphCom*, 76 F.Supp.3d 999, 1005 (N.D. Cal. 2014) (citing *In re GlenFed, Inc. Sec. Litig.,* 42 F.3d 1541, 1547–48 (9th Cir. 1994)).  It is not sufficient to allege that plaintiffs merely saw advertisements during the class period; failing to allege which advertisements they saw or where they saw the advertisements is fatal.  *See*, *e.g.*, *Colgate v. JUUL Labs, Inc.*, 345 F. Supp. 3d 1178, 1191 (N.D. Cal. 2018) (dismissing claims for failure to satisfy Rule 9(b) brought under the CLRA, the UCL, MCPA, and similar laws of other states where plaintiffs alleged they had seen advertisements but did not specify which advertisements they saw or where they had seen them); *In re Nexus 6P Prod. Liab. Litig.*, 293 F. Supp. 3d 888, 951 (N.D. Cal. 2018) (dismissing CLRA claim for failure to satisfy the "high burden" of Rule 9(b) where complaint did not allege plaintiffs had seen any advertisements about the product in question).

Here, plaintiffs fail to satisfy the "high burden" of Rule 9(b) because they do not make specific allegations about any misrepresentations or advertisements made by the defendants. Indeed, Rexroad, Esqueda, Perry, Galindo and Gurtler do not allege even viewing any advertisement.[4]  (Compl. pp. 11-14, ¶¶ 46-66.)  Witcher and Silvera contend they relied on "commercial advertisements" (*id.* p. 7, ¶ 37) and "advertising and information from a variety of reliable sources" (*id.* p. 10, ¶ 43), but neither specifies the advertisements they saw, or where the

---

[4]  Gurtler claims she conducted "research" but does not specify what research or whether the information was supplied by defendants.  (Compl. p. 11 ¶ 47.)

advertisements were distributed.  The allegations therefore lack the "specific content of the false representations as well as the identities of the parties to the misrepresentation." *Misc. Serv. Workers*, 661 F.2d at 782.

The *Colgate* decision is instructive.  Consumers alleged electronic cigarette manufacturers misrepresented nicotine content, and asserted claims under the CLRA, UCL, MCPA, and other state consumer protection laws.  *Colgate*, 345 F. Supp. 3d at 1183-84.  The plaintiffs alleged they saw advertisements on social media but did not "identi[fy] which advertisements they saw during the class period, or where they saw them (outside of social media)."  *Id.* at 1191.  The court found the allegations insufficient to satisfy Rule 9(b).  *Id.*

Here, five of the plaintiffs (Gurtler, Galindo, Perry, Esqueda, and Rexroad) do not contend they viewed any advertisements at all.  Although Witcher and Silvera claim they relied on advertisements, their allegations fail to identify the content or when and where they saw them.  Silvera claims only that he saw advertisements from non-parties Consumer Reports and JD Powers—but still no content, nor allegations that would suggest any misrepresentations originated with defendants.  Of course, simply naming well-known consumer information outlets cannot satisfy the high burden of Rule 9(b).

Similarly unavailing are allegations that Hyundai's website touts the "efficiency and quality of the GDI engines."  (Compl. p. 15, ¶ 71.)  Plaintiffs fail to allege facts that suggest these statements are false, or that the website statements amount to representations that the engines would be "defect free."  *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 954 (N.D. Cal. 2014) (no misrepresentation by automaker because it was "not a case where, *e.g.,* Ford made an affirmative representation that the [sound system] was defect free").  Even the long paragraph plaintiffs cite from Kia's website (Compl. p. 15, ¶ 71) does not relate to the engine defect alleged by the plaintiffs because the web content is describing the power and efficiency of GDI engines, not whether they are or are not reliable, or defect-free.  *See MyFord*, 46 F. Supp. 3d at 954 ( ("Plaintiffs are not really arguing that the [] system does not have the features described in, *e.g.*, Ford's advertisements.  Rather, their beef is that the features of the [] system do not work.");  *Morgan v. Harmonix Music Sys., Inc.*, No. C08-5211BZ, 2009 WL 2031765, at *3 (N.D. Cal. July

MOTION TO DISMISS

7, 2009), as amended (July 30, 2009) ("[P]laintiffs contend that any statement made by defendants that the Rock Band game could be played with drums was false because for certain customers, the pedal eventually failed. But California courts require more than vague statements about a product to form the basis of an actionable CLRA misrepresentation claim.. . . . [P]laintiffs have alleged no specific representations about the durability of the foot pedal.") (internal quotation marks and citations omitted); *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1005 (N.D. Cal. 2014)  ("To satisfy [Rule 9(b)], a plaintiff must identify 'the time, place, and content of [the] alleged misrepresentation[s],' *as well as the 'circumstances indicating falseness' or 'manner in which the representations at issue were false and misleading*.') (emphasis added) (quoting *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547–48 (9th Cir. 1994)); *Colgate*, 345 F. Supp. 3d at 1191 (where plaintiffs alleged that advertising was misleading and argued "they d[id] not need to identify specific advertisements," the court concluded that "[i]f [the court] were to accept this argument, it would eviscerate Rule 9(b)'s particularity requirement.")  Moreover, not a single plaintiff alleges viewing these statements or the websites at all before buying their vehicles, therefore such material cannot form the basis of consumer fraud claims.

Accordingly, plaintiffs' claims under Counts I-VI should be dismissed for failure to plead the advertisements or misrepresentations underlying their claims with particularity under Rule 9(b).[5]

## B.      Plaintiffs Fail To Allege Fraudulent Omissions With Specificity

To the extent plaintiffs contend their consumer and fraud-based claims are based on fraudulent omissions, they must also be pleaded with particularity.  *Kearns,* 567 F.3d at 1126-27 (nondisclosure is a form of misrepresentation and must be pleaded with particularity); *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 997 n. 2 (N.D. Cal. 2009) (fraudulent nondisclosure for California CLRA, FAL, and UCL claims must be pled with particularity under Rule 9(b)). "[A]lthough a claim may be stated under the CLRA in terms constituting fraudulent omissions, to be actionable the omission must be contrary to a representation actually made by the defendant, or

---

[5]  For the same reasons, plaintiffs' allegations are not even specific enough to satisfy the lower standard under Federal Rules of Civil Procedure 8 and 12(b)(6).

an omission of a fact the defendant was obliged to disclose."  *Hoey v. Sony Electronics, Inc.*, 515 F. Supp. 2d 1099, 1106 (N.D. Cal. 2007) (citations omitted); *Davidson v. Apple, Inc.*, 2017 WL 976048, at *9–10 (N.D. Cal. Mar. 14, 2017) (holding that plaintiffs must identify the materials viewed prior to purchasing that omitted the subject information); *James Erickson*, 2019 WL 1755858, at *4 (ACPA claims under fraudulent omission theory failed due to lack of specificity of "what exactly was misleading about the various materials."); *In re Packaged Seafood Prod. Antitrust Litig.*, 242 F. Supp. 3d at 1078 (S.D. Cal. 2017).

Here, plaintiffs make conclusory allegations that defendants "actively conceal the Engine Defect and the safety risks described herein."  (Compl. p. 4, ¶ 10, 12.)  Such allegations are "so general that the statement could be made regarding any design defect in any product."  *Hoey*, 515 F. Supp. 2d at 1106.  Plaintiffs' allegations of concealment appear to be based on three different sets of allegations: (1) that defendants issued technical service bulletins to authorized dealerships in connection with recalls of certain vehicles (Compl. pp. 20-21, ¶¶ 61-68); (2) defendants issued certain recalls of vehicles that are within the class definition (*id.* pp. 21-22, ¶¶ 64-68.); and (3) a Reuters article alleged a "whistleblower" filed a complaint about engine related issues with the NHTSA.  (*Id.* p. 22, ¶¶ 69-70.)  All three of these reasons cannot satisfy the high burden of alleging a fraudulent omission with specificity.

First, the technical service bulletin that plaintiffs point to is not sufficient to support the conspiracy they allege as part of defendants' fraudulent omission.  One bulletin to a dealer noting the potential existence of "engine knocking noise" does not support the broad claim that any vehicle manufactured with a GDI engine suffers from a dangerous engine defect.  If anything, the technical service bulletins cited by plaintiffs show the defendants' responsiveness to any issues with the vehicles they manufactured.

Second, issuance of recalls cannot support a fraudulent omission theory without alleging anything more.  Automakers frequently issue recalls to address problems they become aware of, but such recalls do not lead to the conclusion that they have actively concealed a widespread engine defect.  If that were the case, any plaintiff would be able to satisfy Rule 9(b) if a recall had occurred.

Finally, the Reuters article does not support the proposition that defendants concealed a purported engine defect.   First, as noted in the article, Hyundai denies the allegations and stated that "[t]he company promotes openness and transparency in all safety-related operations, and its decisions on recalls comply with both global regulators and stringent internal processes."[6] Moreover, as plaintiffs' Complaint describes, Mr. Kim's submitted complaint was regarding "not taking enough action" to deal with engine-related issues that came to the Company's attention. (Compl. p. 22, ¶ 69.)  His complaint does not substantiate plaintiffs' sweeping claims that defendants knew about the engine defect and concealed the risks of it years earlier.

Accordingly, plaintiffs fail to plead fraud by omission under FRCP 9(b).

### C.      Plaintiffs Fail To Allege Reliance

As an independent reason to grant dismissal, plaintiffs fail to allege they saw and relied upon any particular misrepresentations.  Reasonable or justifiable reliance, pleaded with particularity, is required to state a fraud-based claim, including for plaintiffs' CLRA, FAL, UCL, ACFA, MCPA, and NCDUPTA claims.  *See Kearns,* 567 F.3d at 1126 (plaintiffs must plead justifiable reliance for fraud-based claims); *Doe v. SuccessfulMatch.com,* 70 F. Supp. 3d 1066, 1076 (N.D. Cal. Sept. 30, 2014) (actual reliance element in fraud-based UCL claim requires plaintiffs to plead "the defendant's misrepresentation or nondisclosure was an immediate cause of the plaintiff's injury-producing conduct"); *MacRae v. HCR Manor Care* Services, No. SACV 14-0715-DOC, 2014 WL 3605893, at *4 (C.D. Cal. July 21, 2014) ("[Plaintiff] fails to plead a violation of the CLRA because he neither allege[d] actual reliance, nor meets the 9(b) heightened pleading standard for claims sounding in fraud"); *Opperman v. Path, Inc.,* 87 F. Supp. 3d 1018, 1045 (N.D. Cal. 2014) (misrepresentation claims under UCL, FAL, and CLRA require plaintiffs to plead injury and causation); *Tucker v. Blvd. At Piper Glen LLC*, 150 N.C.App. 150, 154, 564 S.E.2d 248, 251 (2002) (For NCUDTPA claims, "[w]here an unfair or deceptive practice claim is based upon an alleged misrepresentation by the defendant, the plaintiff must show 'actual reliance'

---

[6]
https://www.nhtsa.gov/vehicle/2011/HYUNDAI/SONATA/4%252520DR/FWD%252520Latest%252520Release#recalls

on the alleged misrepresentation in order to establish that the alleged misrepresentation 'proximately caused' the injury of which plaintiff complains.").

Here, five of the plaintiffs—Gurtler, Perry, Galindo, Esqueda, and Rexroad—do not allege reliance at all but simply state they would not have purchased their vehicles had they known about the purported defect.  (Compl. pp. 12-14, ¶¶ 50, 55, 60, 63, 66.).  None of these five plaintiffs contend they read, heard, or were otherwise exposed to statements, much less relied on them, before purchasing their vehicles.  *Opperman,* 87 F. Supp. 3d at 1046-49 (dismissing UCL, FAL, and CLRA claims because plaintiff failed to allege she read and relied on misleading statements from defendant's website).

### D.   Plaintiffs Fail To Adequately Plead Defendants Knew About the Purported Defect at the Time of Sale

For a misrepresentation (including omission) to be actionable, plaintiffs must demonstrate defendants knew of the purported defect (and the falsity of any statement) at the time of plaintiffs' transaction.  *Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp. 2d 1156, 1163 (N.D. Cal. 2011) (A defendant cannot be "liable under the CLRA for representations about [a product's] characteristics that are rendered misleading due to a defect of which [the defendant] did not know, or of which it did not have reason to know, at the time [the defendant] made the representations."); *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145-48 (9th Cir. 2012) (similar).

Plaintiffs allege that "Hyundai and Kia know of this Engine Defect and the safety risk it poses to consumers" (Compl. p. 2, ¶ 4), but the Complaint does not contain any supporting facts to demonstrate such knowledge.  In lieu of supporting facts, plaintiffs cite to news articles that discuss customer complaints regarding a variety of Hyundai and Kia vehicle models, lodged with the NHTSA largely *after* plaintiffs acquired their vehicles.  (*See* Compl., p. 3, ¶ 6-7) (citing to news articles dated in 2018 and 2019 regarding NTSA complaints).

Plaintiffs also point to statements made by Hyundai and Kia in connection with a recall issued in January 2019 (*Id.* p. 3-4, ¶ 9, n. 5-6), which post-date every plaintiffs' purchase of their vehicles.  Those statements also contain no substance that would suggest the defendants were aware of these issues before they were alerted to them and issued recalls.

1    In *Wilson v. Hewlett-Packard Co.*, the Ninth Circuit rejected similarly attenuated

2  allegations of a defendant's knowledge in affirming dismissal of UCL and CLRA claims.  668

3  F.3d at 1145-48.  The plaintiffs in *Wilson* alleged: (i) the defendant had access to data regarding

4  the claimed defect; (ii) there was another lawsuit involving the same defect in a different model;

5  and (iii) several customer complaints were made regarding the defect.  *Id.* at 1146.  The court,

6  however, found these allegations insufficient because they were speculative, the other lawsuit did

7  not involve the plaintiffs' product, and the customer complaints post-dated the plaintiffs'

8  purchase.  *Id.* at 1146-48.

9    So too here.  Complaints to the NHTSA, many of which were lodged *after* plaintiffs

10  acquired their vehicles, are insufficient to put defendants on notice of a defect across the broad

11  swath of class vehicles alleged by plaintiffs.  Although such complaints may make defendants

12  aware of certain engine-related issues, they are not sufficient to alert defendants to an engine

13  defect that exists in *every* GDI engine for every class vehicles.  And they do not plausibly allege

14  that defendants knew of the purported defect in plaintiffs' vehicle at the time of the purchase.

15  *Grodzitsky v. Am. Honda Motor Co.*, No. 2:12-cv-1142-SVW-PLA, 2013 WL 690822, at *7 (C.D.

16  Cal. Feb. 19, 2013) (plaintiffs cannot "establish a plausible inference of knowledge based on their

17  allegation that Defendant received customer complaints *after* the sales of the vehicles in

18  question.").  Awareness of a defect, much less a misrepresentation regarding a defect, would

19  require evidence suggesting a systemic problem.  *See id.*

20    Similarly, statements made by defendants in connection with the recall do not create an

21  inference that defendants had any knowledge of an incurable engine defect prior to sale of the

22  class vehicles.  Plaintiffs state throughout their complaint that defendants should have issued more

23  recalls (*see e.g.*, Compl. p. 4, ¶ 11), but that is irrelevant to the issue of whether defendants had

24  awareness of any purported engine defect.

25    Accordingly, plaintiffs have failed to allege defendants' knowledge sufficient to create a

26  misrepresentation or fraudulent omission.

27

28

## II.    PLAINTIFFS' EXPRESS WARRANTY CLAIMS FAIL

Plaintiffs Galindo, Gurtler, Perry, and Witcher assert claims for breach of express warranty, all of which fail for several reasons.

### A.    Plaintiff Fail To Allege Express Warranty Under California and Michigan Law

#### 1.    *Plaintiffs Lack Privity With Defendants*

Plaintiffs fail to allege privity with defendants under California and Michigan Law. "The general rule is that privity of contract is required in an action for breach of either express or implied warranty and that there is no privity between the original seller and a subsequent purchaser who is in no way a party to the original sale." *In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224, 1236 (N.D. Cal. 2012); *Montgomery v. Kraft Foods Glob., Inc.*, 822 F.3d 304, 309 (6th Cir. 2016) ("To properly plead a breach-of-express-warranty claim [under Michigan law] . . . [plaintiff] needed to allege that she was in privity with Defendants."). Here, plaintiffs do not allege they were in privity with the defendants. (Compl. pp. 40-41, ¶¶ 184-90.)[7] Therefore, their express warranty claims fail.

#### 2.    *Plaintiffs Do Not Allege An Express Warranty or the Terms of Any Express Warranty*

Plaintiffs fail to allege an express warranty (*i.e,* affirmation of fact or promise or the terms of any written warranty) as they are required to do. *Kearney v. Hyundai Motor Am.*, 2010 Wl 8251077, at *7 (C.D. Cal. Dec. 17, 2010); *Nabors v. Google, Inc.,* 5:10–CV–03897 EJD, 2011 WL 3861893, at *4 (N.D. Cal. Aug. 30, 2011) (Under California law, a plaintiff is require "to plead a cause of action for breach of express warranty, one must allege the exact terms of the warranty . . . ."); *Dillon v. Zeneca Corp.,* 202 Ariz. 167, 42 P.3d 598, 602 (Ariz. Ct. App. 2002) (under Arizona law, express warranty claims asserted outside the U.C.C. context require "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain [to] create[] an express warranty that the goods shall

---

[7]   In California, a privity exception exists when the plaintiff alleges reliance on the express warranty, but no such allegation are made by any of plaintiff here. (Compl. pp. 40-41, ¶¶ 184-90.)

conform to the affirmation or promise.");[8] *Yancey v. Remington Arms Co., LLC*, No. 1:10CV918, 2013 WL 5462205, at *8 (M.D.N.C. Sept. 30, 2013) (under North Carolina law, "a buyer must have relied upon a warrantor's statement in order to establish a breach of an express warranty."); *see also* Mich. Comp. Laws § 440.2313(1)(a) ("An affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.").

Here, plaintiffs allege in conclusory fashion that the "engines in Class Vehicles were covered by express warranties provided by Defendants and became a basis of the bargain in purchasing or leasing those Class Vehicles." (Compl. p. 40 ¶ 185.).  But nowhere do they allege any specific affirmations, promises, or statements relied on in connection with the purchase of their vehicles.  Though some of the plaintiffs generally allege that they relied on advertisements indicating that Kia's vehicles were reliable and safe, (*Id.* pp. 7, 10, ¶¶ 37, 43), they fail to identify any specific affirmations or promises relating to their vehicles that they viewed and relied on that could have conceivably formed the basis of their transactions.[9]  (*Id.* p. 40, ¶ 185).  *See Barakezyan v. BMW of N. Am., LLC,* No. CV1600173SJOGJSX, 2016 WL 2840803, at *6 (C.D. Cal. Apr. 7, 2016) (finding that advertising that states in general terms that a product is superior is not actionable); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.,* 754 F. Supp. 2d 1145, 1182 (C.D. Cal. 2010) ("Plaintiffs cannot base a claim on [an express warranty created by representations in advertisements] in the absence of allegations that they were exposed to them."); *see also Yancey*, 2013 WL 5462205, at *8 (M.D.N.C. Sept. 30,

---

[8]  Plaintiffs do not identify the provisions of Arizona's express warranty law that adopted the U.C.C., nor could they maintain claims under Arizona's U.C.C. provision because they would be required to show vertical privity and cannot do so.  *De Shazer v. Nat'l RV Holdings, Inc.*, 391 F. Supp. 2d 791, 794 (D. Ariz. 2005) (express warranty claims under U.C.C. require privity but express warranty claims "outside the U.C.C." do not).

[9]  Defendants' website representations, such as that the GDI engines are "the biggest advancement in fuel injection" (Compl. p. 15 ¶ 70), are not actionable express warranties.  *Park-Kim v. Daikin Indus., Ltd*, No. 215CV09523CASKKX, 2016 WL 5958251, at *15 (C.D. Cal. Aug. 3, 2016) (internal quotation marks and citations omitted) ("Under California law, to create a warranty, representations regarding a product must be specific and unequivocal.").

1    2013) (dismissing express warranty claims that relied on "general statements about [defendants']

2    commitment to safety and quality.").

3         Nor do plaintiffs allege specific terms for each of the express warranties that cover their

4    vehicles, as required.  Therefore, they have failed to allege "the exact terms of the warranty" and

5    their claims must be dismissed.  *Nabors v. Google, Inc.*, 2011 WL 3861893, at *4; *see also In re*

6    *Clorox Consumer Litig.*, 894 F. Supp. 2d 1224, 1235 (N.D. Cal. 2012) (dismissing breach of

7    express warranty claims where plaintiffs alleged product labels contained warranties because

8    "Plaintiffs do not allege what these labels say, they have failed to identify the exact terms of the

9    warranty.").[10]

10                    **3.    *Plaintiffs Fail To Allege Breach Of Any Express Warranty***

11        Plaintiffs Galindo, Gurtler, and Witcher have not alleged any facts to support a supposed

12   breach of express warranty.  In fact, both Galindo and Witcher allege that their cars were repaired.

13   Specifically, Witcher alleges that a Kia dealer replaced his engine pursuant to the recall  (Compl.,

14   p. 7, ¶ 38), and Galindo alleges a dealer fixed her engine.  (*Id.* p. 13, ¶ 53.)  Gurtler alleges she

15   brought her vehicle in pursuant to a recall campaign and was informed no replacement was

16   necessary, but she does not allege that defendants were obligated under the warranty to replace the

17   engine.  (*Id.* p. 11, ¶ 48.).  Therefore, none of these plaintiffs have alleged any facts indicating that

18   defendants breached any obligations to them.

19   **III.   PLAINTIFFS' IMPLIED WARRANTY CLAIMS FAIL**

20        **A.   Plaintiffs Lack Privity With Defendants, Which Defeats Claims Under
              Michigan, Arizona, and North Carolina Law**

21

22        Plaintiffs' claims for implied warranty under Michigan, Arizona, and North Carolina law

23   (Count IX) require vertical privity.  *Chiasson v. Winnebago Indus.*, No. 01-CV-74809, 2002 WL

24

25   _____

26     [10]  The only allegation that even attempts to identify warranty terms—which does not
     adequately allege the "exact terms" or defendants' obligations under the warranty—is plaintiffs'
27   allegation that Silvera's "vehicle came with the standard Kia 5-year/60,000-mile basic warranty
     and 10-year/100,000-mile powertrain warranty, with no optional extended warranties."  (Compl.,
28   p. 10, ¶ 41.)

32828652, at *9 (E.D. Mich. May 16, 2002);[11] *Richards v. Powercraft Homes, Inc.*, 139 Ariz. 242, 678 P.2d 427 (1984) (en banc) (privity is required for implied warranty of merchantability claims brought under the U.C.C.); *Dassault Falcon Jet Corp. v. Oberflex, Inc.*, 909 F. Supp. 345, 351 (M.D.N.C. 1995) ("North Carolina law requires privity of contract in order to recover for breach of implied warranties.").

Here, plaintiffs make the bare recitation that they are "in privity with Defendants," (Compl. p. 43 ¶ 206) but include no supporting factual allegations. Defendants do not sell directly to consumers, and there is no allegation that the dealerships identified in the Complaint are agents of any defendant. Thus, the implied warranty claims under Michigan, Arizona, and North Carolina law must be dismissed.

### B.   Plaintiffs' Claims Under Nevada's Implied Warranty Statute Fail

Plaintiffs assert a claim under Nevada's implied warranty statute (Count VIII), but they do not allege an adequate basis for the application of Nevada law. Galindo asserts that she is a resident of Nevada (Compl. p. 5 ¶ 21), and that her vehicle broke down on a freeway in Nevada (*id.* p. 13 ¶ 52) but she does not allege where she purchased the vehicle. Therefore, Nevada law may apply to her warranty claims, especially if she purchased the vehicle in a different state (which is not clear from the face of the Complaint). None of the other plaintiffs allege any connections to Nevada; therefore, their claims under Count VIII should be dismissed under this basis.

### C.   Plaintiffs Do Not Allege Their Vehicles Are Unfit For Their Ordinary Purpose

Alternatively, Galindo, Silvera, Esqueda, and Rexroad do not allege their vehicles are unfit for the ordinary purpose for which they are used. The implied warranty laws of Nevada (Count VIII), Michigan, Arizona, and North Carolina law (Count IX) require plaintiffs to allege that the that goods are not fit for the ordinary purposes for which they are used. Nev. Rev. Stat. Ann. §

---

[11]   In *Chiasson*, the court noted that the Michigan Supreme Court had not ruled on whether an implied warranty of merchantability claim under the U.C.C. required a showing of privity against a remote manufacturer, but conducted an exhaustive analysis and concluded the court likely would impose such a requirement. 2002 WL 32828652, at *9. This Court should adopt the approach of *Chiasson* and dismiss the implied warranty claim under Michigan law for the same reasons.

104.2314; Ariz. Rev. Stat. Ann. § 47-2314; Mich. Comp. Laws Ann. § 440.2314; N.C. Gen. Stat. § 25-2-314).  Plaintiffs' make conclusory allegations that the Class Vehicles were not fit for the ordinary purposes for which are used (Compl. p. 42, ¶ 198), but do not allege any facts in support of such assertions.  Silvera, Esqueda, and Rexroad do not allege any performance issues with their vehicles.  (*Id.*, pp. 10-11, 14, ¶ 41-44, 61-66.)  Galindo alleges that after her car broke down,  an unidentified dealership "represented that the issue that caused the break down was fixed."  (*Id.* p. 14, ¶ 53.)  Although she contends that "the engine issues persisted," she does not provide any specific facts as to the engine issues she describes, nor whether she is able to drive the vehicle. (*Id.*, p. 14, ¶¶ 53-54.)  A conclusory allegation that her vehicle remains unfit for ordinary purposes is insufficient to maintain an implied warranty claim.  Therefore, plaintiffs' implied warranty claims should be dismissed.

### D.     Plaintiffs' Song-Beverly Act Claims Fail

Witcher's, Gurtler's, Galindo's, Perry's, Esqueda's, and Rexroad's claims under California's Song-Beverly Consumer Warranty Act (Count X) fail as a matter of law because the statute applies only to transactions where title is taken within California.  Cal. Civ. Code § 1792. Both the California Supreme Court and federal district courts refuse to apply Song-Beverly to transactions where title is taken outside California.  *Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 851 (N.D. Cal. 2012) ("By its terms, the Song–Beverly Act applies only to goods sold in California.") (citing Cal. Civ. Code § 1792).  *Cummins, Inc. v. Superior Ct.*, 36 Cal. 4th 478, 493 (Cal. 2005) ("[T]he structure and language of the existing statutory provisions indicate that the Legislature intended the Act to apply only to vehicles sold in California.").  Here, only one plaintiff[12]—Silvera—alleges to have acquired his vehicle in California.  Therefore, every other plaintiff's claim under the Song-Beverly Act should be dismissed as a matter of law.

Additionally, Witcher, Perry and Rexroad also fail to state a claim under the Song-Beverly Act because the statute does not hold the manufacturer liable for the resale of goods.  *Hindsman v. Gen. Motors LLC*, No. 17-CV-05337-JSC, 2018 WL 2463113, at *14 (N.D. Cal. June 1, 2018)

---

[12]  Esqueda and Rexroad do not allege where they purchased their vehicles.

("In other words, the distributor or retailer is liable for the sale of used products, not the original product manufacturer.") (citing Cal. Civ. Code § 1795.5(a)).

Finally, plaintiffs' claims under the Song-Beverly Act fail because plaintiffs fail to state a claim for breach of implied warranty. *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 n.2 (9th Cir. 2009) ("Both parties agree that the plaintiffs' claims under California's Song–Beverly [Act] and the federal Magnuson–Moss Warranty Act[] require the plaintiffs to plead successfully a breach of state warranty law.").

### E.    **Plaintiffs' Magnuson-Moss Warranty Act Claims Fail**

#### 1.    *Plaintiffs Plead No Viable State Law Warranty Claims*

Plaintiffs must plead a viable state law warranty claim in order to state a claim under Count XI, the Magnuson-Moss Warranty Act ("MMWA").  The MMWA creates a federal cause of action for breach of written and implied warranties under state law.  *See* 15 U.S.C. § 2310(d)(1) (creating a "civil action" for a "consumer who is damaged by the failure of a . . . warrantor . . . to comply with any obligation . . . under a written warranty [or] implied warranty).  Therefore, without a viable breach of warranty claim, a Magnuson-Moss claim cannot proceed.  *See Clemens v. DaimlerChrysler Corp.,* 534 F.3d 1017, 1022 (9th Cir. 2008) ("[The] disposition of the state law warranty claims determines the disposition of the Magnuson-Moss Act claims.").  Because plaintiffs fail to plead actionable state warranty claims (*see generally* sections II & III ), their Magnuson-Moss claims are precluded.

#### 2.    *Plaintiffs' Complaint Fails To Contain 100 Named Plaintiffs*

Plaintiffs' Complaint fails to name at least 100 plaintiffs as required by the MMWA.  Thus their claims should be dismissed.

The MMWA provides that "[n]o claim shall be cognizable in a suit brought [in federal district court] . . . (c) if the action is brought as a class action, and the number of named plaintiffs is less than one hundred."  15 U.S.C.A. § 2310.  Courts in this circuit have dismissed MMWA Act claims for lack of jurisdiction where there are less than 100 named plaintiffs. *Patterson v. RW Direct, Inc*., No. 18-cv-00055-VC, 2018 WL 6106379, at *2 (N.D. Cal. Nov. 21, 2018); *MacDougall v. Am. Honda Motor Co., Inc.,* No. SACV 17-01079 AG, 2017 WL 8236359, at *3-4

(C.D. Cal. Dec. 4, 2017).  While some older cases concluded that CAFA overrode the obligation to identify 100 named plaintiffs, *see Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 954 (C.D. Cal. 2012), "the weight of more recent authority is that the 100-plaintiff requirement cannot be supplanted by the prerequisites for exercising diversity jurisdiction under CAFA."  *Cadena v. Am. Honda Motor Co.,* No. CV184007MWFPJWX, 2019 WL 3059931, at *11 (C.D. Cal. May 29, 2019).

## IV.   PLAINTIFFS LACK STANDING TO BRING CLAIMS BASED ON ECONOMIC HARM

Plaintiffs Silvera, Galindo, Esqueda, and Rexroad lack standing to bring claims because they have not alleged they suffered any cognizable injury.  To bring a claim in federal court, plaintiffs must establish that they have Article III standing.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  To establish Article III standing, a plaintiff must show an injury in fact, causation, and redressability.  To demonstrate an injury in fact, a plaintiff must demonstrate the invasion of a legally protected interest which is "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."  *Id.* at 560 (citations and quotations omitted).  "The injury-in-fact requirement requires a plaintiff to allege an injury that is both 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (citing *Lujan*, 504 U.S. at 560).  "Article III standing requires a concrete injury even in the context of a statutory violation."  *Id.* at 1549. An injury is concrete when it actually exists.  *Id.* at 1548.  For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way."  *Id.*  In class actions, the named representatives must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003) (quoting *Pence v. Andrus*, 586 F.2d 733, 736-37 (9th Cir. 1978)).

Here, Silvera, Esqueda, Galindo and Rexroad's claims for economic harm are speculative and inadequately pleaded.  Silvera, Esqueda, and Rexroad do not allege they have experienced *any* problems with their vehicles, let alone that their engine failed due to the purported defect.  (*Id.* pp.

10-11, 14, ¶ 41-44, 61-66.)  Galindo alleges she experienced an engine issue but it was fixed.  (*Id.* p. 14, ¶ 53.)  Rather than allege any out of pocket losses associated with the purported engine defect, plaintiffs rely on general allegations that they "would have paid less" for the vehicles.  (*Id.* p. 14, ¶ 53).  While overpayment and diminution in value are cognizable forms of injury, such conclusory allegations unsupported by any facts are insufficient to establish Article III standing.  *Cahen v. Toyota Motor Corp.*, 717 Fed. Appx. 720, 723-24 (9th Cir. 2017) (conclusory allegations that vehicles are worth less is insufficient to establish standing); *see also Brown v. Hyundai Motor America*, No. 18-11249, 2019 WL 4126710, at *2-3 (D.N.J. Aug. 30, 2019) (same).  When plaintiffs allege "economic loss predicated solely on how a product functions when the product has not malfunctioned," the plaintiffs must "allege 'something more' to support their claims than merely alleging 'overpaying for a defective product.'"  *Anderson v. Hyundai Motor Company Ltd.*, 2014 WL 12579305, at *7 (C.D. Cal. July 24, 2014).  Plaintiffs Silvera Esqueda, Galindo, and Rexroad  have failed to allege "something more" so as to establish standing.  *Cahen*, 717 Fed. Appx.at 723.

## CONCLUSION

For all of the foregoing reasons, the Court should grant defendants' motion to dismiss and dismiss the lawsuit.

DATED:  September 26, 2019                    QUINN EMANUEL URQUHART &
                                              SULLIVAN, LLP


                                              By  ___/s/ Shon Morgan_____
                                                  Shon Morgan
                                                  *Attorneys for Defendants*